**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE  DIVISION**

CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
July 13, 2026
LAURA A. AUSTIN, CLERK
BY:  s/J.Vasquez
        DEPUTY CLERK

| | |
|---|---|
| **GILFORD LEE,** ) | |
| ) | |
| Plaintiff, ) | Case No. 7:25CV00085 |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| **S. CHATT, et al.,** ) | JUDGE JAMES P. JONES |
| ) | |
| Defendants. ) | |

*Gilford Lee, Pro Se Plaintiff; Timothy E. Davis, Assistant Attorney General,
OFFICE OF THE ATTORNEY GENERAL, CRIMINAL JUSTICE & PUBLIC SAFETY DIVISION,
Richmond, Virginia, for Defendant S. Chatt.*

The plaintiff, Gilford Lee, a Virginia prison inmate, filed this civil rights action pursuant to 42 U.S.C. §1983, claiming that defendant correctional officer S. Chatt used excessive force against him in violation of his Eighth Amendment rights. Pretrial motions have been filed by Mr. Lee, which are resolved in this ruling.[1]

I.  BACKGROUND

According to Lee's pro se Complaint, filed on February 6, 2025, correctional officer Chatt forcefully shut Lee's hand in the tray slot of his cell door while Chatt was collecting breakfast meal trays on the morning of May 9, 2024, injuring Lee's

---

[1]  The plaintiff is proceeding without a lawyer.  In response to his request for counsel, the court attempted to find volunteer counsel for him but could not do so.  Both legally and factually, this case is uncomplicated and within Lee's ability to handle at trial.

left wrist.  This event occurred while Lee was housed at Wallens Ridge State Prison.

He is currently incarcerated at a different prison in Virginia.

Lee submitted an emergency grievance on the same date of the alleged

incident, asserting that, "[i]f you check the camera you will see the officer trying to

force the tray slot closed."  Additional Evid. 4, Dkt. No. 23.  Lt. Stacey responded,

stating that "camera review does not reflect that your arm was shut in the slot."  *Id.*

Lee filed a written complaint with the same allegations, to which officer Caughron

responded, "I reviewed the video and could not see the officer slamming the tray

slot.  It appeared that he closed the slot and got your tray.  You did not appear in the

window until right after the tray slot was closed."  *Id.* at 1.  The written complaint

was dated May 9, 2024 and the response was dated May 23, 2024.  Lee submitted a

separate written complaint, also on May 9, 2024, related to Lt. Stacey's response,

stating that "you can't see my ar[m] due to the box on the tray slot but can see that

officer Chatt trying to forcefully close the tray slot but was unable to due to my left

wrist."  *Id.* at 13.  S. Caughron responded on May 23, 2024, that "I also reviewed

the video.  It does not appear that the officer forcibly closed the tray slot.  It appears

that he simply closed the slot just like the others during tray pickup."  *Id.*

Lee asserts that he later described the event to Sgt. Caudill when requesting

medical assistance and that Sgt. Caudill recorded the conversation with his body-

worn camera.[2]  Lee's injuries were later examined by a doctor.  He claims that it took

a few days for swelling to reduce, and he was unable to put any pressure on his wrist

until June 16, 2024.

As defendants, Lee named correctional officer Chatt and former Virginia

Department of Corrections (VDOC) Director Chadwick Dotson.[3]  As relief, Lee

seeks punitive and compensatory damages and to be transferred to a prison in a

different state correctional region.

The case was scheduled for a jury trial and a Trial Order was entered on May

7, 2026.  As relevant, the Trial Order directed Lee as follows:

> If the plaintiff Mr. Lee wishes any witnesses to testify on his behalf at
> trial, he must file with the Court a list of such witnesses, including their
> names and addresses, together with a statement of the testimony each
> witness is expected to provide at trial that is relevant to the case.  The
> list must be delivered to the prison authorities for mailing to Clerk, U.S.
> District Court, 210 Franklin Road SW, Suite 540, Roanoke, VA 24011-
> 2208, no later than **June 24, 2026**.

Trial Order 1–2, Dkt. No. 36.

On April 9, 2026, after the case was scheduled for trial, Lee filed his first

motion for discovery, requesting video footage of the incident at issue.  Pl. Mot.,

---

[2] In response to court order related to a discovery motion filed by Lee on April 9,
2026, counsel for Chatt stated that the footage from Sgt. Caudill's body-worn camera was
made available for Lee's review.  Resp. to Ct. Order 2, Dkt. No. 35.  Lee signed an
acknowledgment that he reviewed the footage on April 27, 2026.  *Id.* at Attach., Dkt. No.
35-1.

[3] Dotson is no longer a party to the case.  Op. & Order, Dkt. No. 24 (granting
Dotson's Motion to Dismiss).

Dkt. No. 28; *see also* Pl. Mot., Dkt. No. 30 (requesting camera footage but specifying that the requested footage from D-6 pod between the time of 7:30 a.m. and 8:30 a.m. on May 9, 2024); Pl. Mot., Dkt. No. 38 (amending the motion for discovery and, again, requesting camera footage from D-6 pod between 7:30 a.m. and 8:30 a.m. on May 9, 2024). The court granted Lee's discovery requests and directed Chatt to arrange for Lee to have the opportunity to view the footage before trial and to make the footage available for evidentiary use at trial. Order 2, Dkt. No. 29; Order, Dkt. No. 34; Order 1–2, Dkt. No. 41. Counsel for Chatt told the court that, other than footage from Sgt. Caudill's body-worn camera, no other footage now existed. Def. Resp. 2, Dkt. No. 35; Def. Resp., Dkt. No. 44.

Lee then submitted a filing titled, "Plaintiffs Objection to the Defendants Denial of Having Video Footage for May 9, 2024, between 7:00 A.M. 8:00 A.M.," (Dkt. No. 46), along with two subpoenas duces tecum, (Dkt. No. 47). The subpoenas duces tecum were submitted on Virginia forms and requested "Wallens Ridge State Prison, Video Recording of D-6 Pod on May 9, 2024, between 5:45 A.M. – 9:10 A.M. hrs.," as well as "Inmate Roster for D-6 Pod on May 9, 2024, All plaintiff's medical records from May 1, 2024, to June 30, 2024, And all written complaints and grievances for case." Pl. Mot., Dkt. No. 47.

The court construed the subpoenas duces tecum as a Motion for Discovery, and ordered that Chatt produce the requested materials, except for the video footage.

The court advised Lee that it "cannot compel the defendant to produce evidence that does not exist."  Order 2, Dkt. No. 49.  Chatt filed a notice certifying that the requested documentary materials were mailed to Lee on July 1, 2026.

An initial pretrial conference was held on July 7, 2026, at which time I addressed pending evidentiary matters with the parties.  First, regarding Lee's objections to Chatt's denial of having video footage, which was construed as a motion for spoliation sanctions, Chatt's counsel agreed the footage should have been retained and was directed to submit a proposed jury instruction that may cure any prejudice to Lee.  Order, Dkt. No. 54.  Second, because Lee indicated he had not yet received the requested documentary evidence, including an inmate roster which would help him identify witnesses he intended to call for trial, counsel was directed to cause delivery of the materials that day.  *Id.*

A final pretrial conference was held on July 9, 2026, to resolve outstanding matters before trial.  Lee made two oral motions and, considering all the foregoing, they will be addressed as follows.

II.  LEE'S PRETRIAL MOTIONS

A.  Motion to Compel.

During both pretrial conferences, Lee referenced filing a Motion to Compel but expressed uncertainty about whether the court had received it.  He indicated that the motion was related to the surveillance video footage of D-6 Pod during the

morning of May 9, 2024, that he had requested on multiple occasions.  I explained to Lee that because the footage does not exist, its production cannot be compelled, and his request would be considered to be a Motion for Sanctions under a spoliation of evidence theory.

"Spoliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."  *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001).  Motions for sanctions regarding spoliation of electronically stored information (ESI) are governed by Rule 37(e) of the Federal Rules of Civil Procedure, which sets forth the following four elements to determine whether spoliation of ESI has occurred:

1) ESI should have been preserved in the anticipation or conduct of litigation;

2) it was lost;

3) the loss occurred because a party failed to take reasonable steps to preserve it; and

4) it cannot be restored or replaced through additional discovery.

*Johns v. Gwinn*, 503 F. Supp. 3d 452, 462 (W.D. Va. 2020) (citing Fed. R. Civ. P. 37(e)).  If the court concludes that these threshold elements are met, the question will then become whether sanctions are appropriate.  *Id.* at 470.

Lee has been advised that the video footage he requests does not exist. Counsel for Chatt asserts that it was routinely deleted but does not dispute that the footage should have been retained.  Indeed, Lee referred to the footage in the emergency grievance and written complaints filed with the facility on the date of the alleged incident, effectively placing the defendant on notice of anticipated litigation. *Id.* at 466 (concluding that, although the plaintiff's "statements and grievances were not 'direct, specific threats of litigation,' VDOC had much more than mere 'knowledge of the dispute'") (quoting *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96, 106 (E.D. Va. 2018)).

It is contended that it was not defendant Chatt's  personal duty to preserve the evidence.  The Fourth Circuit has held that "[a] party seeking sanctions based on the spoliation of evidence must establish . . . that the alleged spoliator had a duty to preserve material evidence" and "[t]his duty arises 'not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation.'" *Turner v. United States*, 736 F.3d 274, 282 (4th Cir. 2013) (quoting Silvestri, 271 F.3d at 591).  Although it is argued that in his role as a correctional officer Chatt would not have been involved in surveillance video retention or destruction at the facility, spoliation by a nonparty may be imputed to a party.  *Sylvestri*, 271 F.3d at 591.  Because of their "special relationship," this court has determined that the VDOC's duty to preserve material

evidence can be imputed to a defendant correctional officer.  *Johns*, 503 F. Supp. 3d at 462–63.

Therefore, with the threshold elements under Rule 37(e) being met, the question becomes whether sanctions are appropriate, which requires an analysis of the defendant's state of mind.  In accordance with Rule 37(e), a finding that "the spoliator 'acted with the intent to deprive another party of the information's use in the litigation,'" allows the court to prescribe the more severe sanctions listed under subsection (2)[4]; while "only a finding of prejudice is required" for "not-greater-than-necessary sanctions" when the spoliator failed to take reasonable steps to preserve the evidence.  *Wall v. Rasnick*, 42 F.4th 214, 222 (4th Cir. 2022).  As explained by the Rule 37(e)(2) 2015 Amendment to the Advisory Committee Note, "[t]he better rule for the negligent or grossly negligent loss of [ESI] is to preserve a broad range

---

[4]  Rule 37(e)(2) provides that

> only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may [the court]:
>
> (A) presume that the lost information was unfavorable to the party;
>
> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>
> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e)(2).

of measures to cure prejudice caused by its loss, but to limit the most severe measures to instances of intentional loss or destruction."

Despite the loss of the video evidence, Chatt contends that it was not lost in bad faith. While spoliation can occur when the destruction of evidence is willful, it can also occur when the destruction is the result of inadvertent, albeit negligent, conduct. *Silvestri*, 271 F.3d at 593. This is so even when evidence is destroyed as a matter of routine procedure. *Doe v. Charlotte Mecklenburg Bd. Of Educ.*, No. 23-1182, 2024 WL 3565522, at *9 (4th Cir. July 29, 2024) (unpublished) (finding that "videos were destroyed as a matter of routine procedure, and the record reveals no more than mere negligence in the failure to preserve the footage").

Although Lee argues that Chatt acted with malicious intent, he offers no evidence to support this theory, and mere speculation is insufficient to warrant sanctions. *See, e.g.*, *In re Ethicon, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, 299 F.R.D. 502, 523 (S.D.W. Va. Feb. 4, 2014) (determining that "speculative or generalized assertions . . . are insufficient" for the party seeking sanctions to prevail on a spoliation claim) (citation omitted).

Because there is no evidence that the loss of video footage was willful, the court may order "measures no greater than necessary to cure the prejudice" under Rule 37(e)(1). "An evaluation of prejudice from the loss of information necessarily includes an evaluation of the information's importance to the litigation." Fed. R.

Civ. P. 37(e)(1) advisory committee's note to 2015 Amendment. While "the moving party 'cannot be expected to demonstrate with certainty the content' of the lost evidence," he must "demonstrate a likelihood that the lost evidence would have been favorable to the moving party's case." *Johns*, 503 F. Supp. 3d at 470 (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indust. Inc.*, 803 F. Supp. 2d 469, 498–99 (E.D. Va. 2011)).

At this time, however, I need not determine whether Lee would, in fact, be prejudiced by the loss of the video footage because counsel for Chatt has suggested curing any possible prejudice by a jury instruction . *Muhammad v. Mathena*, No. 7:14cv00529, 2016 WL 8116155, at *9 (W.D. Va. Dec. 12, 2016) (recommending, in part, that the court "instruct the jury that a recording of the . . . altercation was made, [the plaintiff] requested that it be preserved, but it was subsequently lost through no fault of [the plaintiff's] and the jurors should not assume that the lack of corroborating objective evidence undermines [the plaintiff's] version of events"). Furthermore, in accordance with Rule 37(e)(1) 2015 Amendment to the Advisory Committee Note, the court must ensure that the remedy granted does not "have the effect of measures that are permitted under subdivision (e)(2)," which is only appropriate upon "a finding of intent to deprive another party of the lost information's use in the litigation." Therefore, by issuing a jury instruction as proposed, any prejudice to Lee that becomes apparent based on the evidence

presented at trial would be limited, while avoiding unwarranted adverse inference against Chatt.

## B.  Motion to Continue.

Lee was directed by the May 7, 2026, Trial Order to submit a list of witnesses by June 24, 2026.  To date, no witness list has been received.  During the first pretrial conference, Lee explained that he needed to review an inmate roster from Chatt in order to identify inmates who may have witnessed the alleged incident at issue. Counsel for Chatt expedited Lee's receipt of the inmate roster and, during the second pretrial conference, Lee stated that he had the opportunity to review it.

Upon inquiry, Lee clarified that he had not communiucated with any inmate at Wallens Ridge while he was incarcerated there regarding the incident and has no present knowledge that any inmate actually witnessed it.  Notably, Lee was housed in solitary confinement at the time of the event in question and, as he described, inmates were not permitted to interact with one another.  Furthermore, each cell had only a small window and Lee concedes that he does not know if any other inmate was at his window when the event occurred.  Because of Lee's uncertainty regarding who may have observed the alleged assault, he requested that the court assist him in contacting all inmates who were housed in cells across from his cell, namely those in cells D-6-1 through D-6-10 and D-6-21 through D-6-28, to find out whether they saw the May 9, 2024, incident.  Then, if one or two of these inmates observed the

incident, he would request to use their testimony at trial.

Based on how long it would take to fulfill Lee's request in conjunction with the approaching trial date, I have construed his request as a Motion to Continue the trial of this matter to conduct further discovery.[5]  Considering the circumstances, and within my broad discretion, I conclude that the motion must be denied.  *See United States v. Williams*, 445 F.3d 724, 738 (4th Cir. 2006) ("[B]road discretion must be granted trial courts on matters of continuances.") (internal quotation marks and citation omitted); *see also United States v. Hedgepeth*, 418 F.3d 411, 419 (4th Cir. 2005) ("[A] trial court's denial of a continuance is . . . reviewed for abuse of discretion; even if such an abuse is found, the [moving party] must show that the error specifically prejudiced [his] case in order to prevail.").

This case was opened in February 2025.  No motion requesting to conduct discovery in any respect had been filed until after the case had been set for trial in April 2026, and the request for the inmate roster was filed after the Trial Order was entered in May 2026 by using a subpoena form.  Lee's issue with identifying witnesses was raised for the first time during the first pretrial conference.  Although Lee sent his request for the inmate roster before his witness list was due, he never suggested that he needed the inmate roster for help with identifying witnesses, leaving the court to speculate about the purpose for such request.

---

[5] Lee has not submitted a written motion.

Moreover, there are logistical hurdles implicated by Lee's request that cannot be overcome. Although Lee may have now obtained the names of inmates housed in solitary confinement in May 2024, those inmates may have since been released from prison, transferred to another facility, or otherwise be difficult to locate. Additionally, assuming all the inmates could be located, coordinating an avenue for Lee to communicate with the large number of inmates he desires to poll for information would be problematic and would require a significant delay of the trial date.

Even if I allowed a continuance so that Lee can begin this process, he cannot establish that his case would be prejudiced without such testimony given his uncertainty whether any inmate had even observed the alleged altercation. Lee admitted that he had not spoken with any inmate about the incident and that he does not know if any inmate witnessed the event through their small windows across the corridor. Ultimately, given the circumstances of locating and communicating with potential inmate witnesses balanced with the lack of any prejudice for denial of a continuance to do so, Lee's Motion to Continue will be denied.[6]

---

[6] Chatt also objected to Lee's untimely identification of witnesses. Under a similar analysis, the objection will be sustained. *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless."); *see also Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 190 (4th Cir. 2017).

III. CONCLUSION

Accordingly, it is **ORDERED** as follows:

1. Lee's oral Motion for Spoliation Sanctions is DENIED; and

2. Lee's oral Motion to Continue the trial of this matter for purposes of
   conducting further discovery is DENIED and Chatt's oral objection to
   Lee's untimely identification of witnesses is SUSTAINED.

ENTER:  July 13, 2026

/s/  JAMES P. JONES
Senior United States District Judge